UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA DRAKE, for herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 09-C-6114 ) |
| v. | ) Judge John W. Darrah ) |
| OCWEN FINANCIAL CORPORATION; and OCWEN LOAN SERVICING, LLC, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Donna Drake and on behalf of all others similarly situated, brought this action under the Truth in Lending Act of 1968 ("TILA"), codified at 15 U.S.C. § 1601, *et seq.*, and its implementing Regulation Z, codified at 12 C.F.R. § 226, *et seq.*, seeking restitution, disgorgement, money damages, attorneys' fees, and other equitable relief against Ocwen Financial Corporation ("Ocwen Financial") and Ocwen Loan Servicing, LLC ("Ocwen Servicing"). Drake also brings state claims pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505, *et seq.*, and a claim for Unjust Enrichment. Defendant Ocwen Financial has filed a Motion to Dismiss for Lack of Personal Jurisdiction, and Ocwen Servicing has filed a Motion to Dismiss for Failure to State a Claim.[1]

---

[1] In the event that Ocwen Financial's Motion to Dismiss for Lack of Personal Jurisdiction fails, Ocwen Financial joins Ocwen Servicing's Motion to Dismiss for Failure to State a Claim.

## BACKGROUND

The following facts are taken from Plaintiff's Amended Class Action Complaint.

Ocwen Financial is a Florida Corporation that maintains offices in Arizona, California, Florida, Georgia, and New York, with global operations in Canada, Germany, Uruguay, and India. Ocwen Servicing is a wholly-owned and controlled subsidiary of Ocwen Financial. Ocwen Servicing is a licensed mortgage servicer in all 50 states. Donna Drake is a resident of Illinois.

In late November 2006, Drake purchased a home in Illinois, using funds obtained by a loan secured by a mortgage on her new home. On January 16, 2007, an assignment of Drake's mortgage was executed from Mortgage Electronic Registration Systems, Inc., ("MERS"), as nominee for Creve Cor Mortgage, Inc., to HSBC Bank USA, N.A., ("HSBC"). The assignment lists HSBC's address as: Ocwen Loan Servicing, LLC., 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409. The assignment was signed by Scott Anderson, Vice President of MERS.

In June 2008, Drake had difficulty making timely mortgage payments and was informed by Ocwen Servicing that Ocwen Servicing was offering special loan modifications for a limited time; Drake did not modify her loan at this time. In October 2008, Ocwen Servicing sent Drake a letter informing her that she had been selected to receive a special loan modification. This letter stated that Drake would not "be charged any fees or costs related to this offer."

Drake was approved for a loan modification and signed the Loan Modification Agreement ("Agreement") that Ocwen Servicing had sent her. The Agreement stated that the principal balance of her loan was $123,139.56, her monthly payment would be

$736.21, the loan's annual interest rate would be 6.500 percent, that she would make payments until December 1, 2036, and, at such time, a balloon payment would be made. The Agreement did not state the total amount due over the life of the loan, the total number of payments that would be made, the amount of principal and interest paid off by each monthly payment, nor the finance charges that would be assessed over the life of the loan.

Drake was told that the balloon payment would account for the amount that she was behind on her mortgage payments before signing the modification. Drake was not told that the balloon payment would also result in an increasing principal balance, computed by unpaid interest and unpaid principal each month over the lifetime of the loan.

After Drake entered into the modification, she discovered that the principal balance after the modification included not only the principal, interest, and finance charges, but also the costs of the foreclosure proceedings against her home, late charges, and other charges related to the modification that were not disclosed in the Agreement.

## ANALYSIS

### *Motion under 12(b)(2)*

Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. *See Steel Warehouse of Wisc., Inc. v. Leach,* 154 F.3d 712, 714 (7th Cir. 1998). When deciding whether the plaintiff has made a necessary showing, a court can look to affidavits and exhibits submitted by each party. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir. 1987) *(Turnock)*. When determining whether the plaintiff has met the burden of establishing a *prima facie* case of jurisdiction, this Court must take jurisdictional

3

allegations in the Complaint as true, unless controverted by the defendant. *See Turnock*, 816 F.2d at 333. Additionally, all factual disputes must be resolved in favor of the plaintiff. *Turnock*, 816 F.2d at 333. Jurisdictional allegations in the complaint are taken as true, unless controverted by the defendant's affidavits or exhibits, and any factual disputes must be resolved in favor of the plaintiff. *See Turnock*, 816 F.2d at 333.

A determination of whether this Court has personal jurisdiction over the non-resident Defendant Ocwen Financial requires an examination of three sources of law: "(1) state statutory law, (2) state constitutional law, and (3) federal constitutional law." *RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) (*RAR*).

Under Illinois law, a defendant is subject to the jurisdiction of its courts if it is doing business within the state or if the cause of action arises from several specified acts, including the transaction of any business within Illinois. 735 ILCS 5/2-209(b)(4), (a)(1). The statute also provides that an Illinois court may exercise jurisdiction on any basis permitted by the state or federal constitution. 735 ILCS 5/2-209(c). Therefore, the statute authorizes the exercise of personal jurisdiction by the Illinois courts to the fullest constitutional limit; and the statutory analysis collapses into a due process inquiry, and whether the defendant engaged in any of the acts enumerated in the long-arm statute need not be considered by the court. *Abarca v. Manheim Servs. Corp.*, 2006 U.S. Dist. LEXIS 13777 *5 (March 24, 2006) (citing *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Partnership*, 34 F.3d 410, 411 (7th Cir. 1994) (citing cases)).

The Due Process Clause of the United States Constitution permits an Illinois court to exercise jurisdiction over a non-resident defendant only if the defendant has had "certain minimum contacts [with the state] such that the maintenance of the suit does not

4

offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted). A defendant need not be physically present within the jurisdiction to have sufficient minimum contacts if the defendant does something by which he purposefully availed himself the privilege of conducting activities in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 252-54 (1958). The critical inquiry is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This determination depends on whether the plaintiff asserts general or specific jurisdiction against the defendant. *RAR*, 107 F.3d at 1277.

"General jurisdiction . . . is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has continuous and systematic general business contacts with the forum state." *RAR*, 107 F.3d at 1277 (internal citations omitted). A defendant with extensive contacts in a state can be subject generally to the personal jurisdiction of that state's courts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). In order to have general jurisdiction, the business activities of the defendant cannot be inadvertent, trivial or sporadic; they must be intentional, substantial and continuous. *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 570 (7th Cir. 1989).

Specific jurisdiction "refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum." *RAR*, 107 F.3d at 1277 (internal citations omitted). To determine whether specific jurisdiction exists, this Court must determine whether Ocwen Financial has "purposefully established minimum contacts

within [Illinois]" and whether those contacts would make personal jurisdiction reasonable and fair under the circumstances. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Defendants must have "purposefully availed" themselves of the privilege of conducting activities within the forum state, invoking the benefits and protections of its laws, such that they would "reasonably anticipate being haled into court there." *Asahi-Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987). Drake must establish that haling Ocwen Financial into court is consistent with the Fourteenth Amendment's due process clause. *LGF, LLC. v. Zapata Corp.*, 78 F. Supp. 2d 731, 734 (N.D.Ill.1999). The due process requirement is met if: (1) the defendant has sufficient minimum contacts with the forum state; (2) the claims asserted arise or result from the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Euromarket Designs, Inc., v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 837 (N.D. Ill. 2000).

Drake makes two arguments in her Opposition to Ocwen Financial's Motion to Dismiss for Lack of Personal Jurisdiction: (1) that jurisdiction over Ocwen Financial is proper because Ocwen Financial is the "alter ego" of Ocwen Loan Servicing and that since jurisdiction is proper over Ocwen Servicing it should be proper over Ocwen Financial and (2) that jurisdiction over Ocwen Financial is proper because of Ocwen Financial's website.

### "Alter ego" Jurisdiction

First, Drake argues that Ocwen Financial exhibited enough control over its subsidiary, Ocwen Servicing, so it was merely an "alter ego," and, thus, the actions of Ocwen Servicing should be imputed to Ocwen Financial for the purposes of personal

6

jurisdiction. The parties agree that Ocwen Servicing is subject to personal jurisdiction in Illinois.

Under Illinois law, courts will pierce the corporate veil only when, first, there is "such unity of interest and ownership that the separate personalities [of the corporations] no longer exist" and, second, when circumstances are "such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Great Lakes Overseas v. Wah Kwong Shipping Group*, 990 F.2d 990, 996 (7th Cir. 1993) (citing *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991)).

In determining whether the requisite degree of control is maintained by one corporation over the affairs of another to justify disregarding their separate corporate identities, the Illinois courts have considered some of the following: (1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another corporation as its own. *Van Dorn Co., v. Future Chemical and Oil Corp.*, 753 F.2d 565, 570 (7th Cir. 1985) (*Van Dorn*) (citing cases).

In support of this argument, Drake asserts that: (1) Ocwen Servicing is 100 percent owned by Ocwen Financial; (2) Ocwen Servicing and Ocwen Financial share the same business address; (3) Ocwen Financial's SEC Form 10-5 filed March 12, 2009, constantly refers to Ocwen Servicing and Ocwen Financial as "we"; (4) Ocwen Financial's website directs its mortgage customers, via a link on its home page "Mortgage Customers," to the website of Ocwen Servicing; and (5) Ocwen Servicing's website bears Ocwen Financial's trademark and allows its customers to "return to Ocwen's homepage" and shows little differentiation between the two entities.

7

In support of Ocwen Financial's argument that Ocwen Servicing is not the "alter ego" of Ocwen Financial, Ocwen Servicing filed an affidavit from Chomie Neil, who is employed by Ocwen Servicing as a Manager of Trial Preparation/Discovery. Neil's Affidavit states:

> Ocwen Loan Servicing and Ocwen Financial are separate and distinct entities for all relevant corporate and regulatory purposes. . . . Ocwen Financial does not now conduct, nor has it ever conducted, any business in the state of Illinois. Ocwen Financial does not now own, nor has it ever owned, any real property in the state of Illinois. Ocwen Financial does not now have, nor has it ever had, an office, telephone number, or any employees in the state of Illinois. . . . Ocwen Financial and Ocwen Loan Servicing are entirely separate corporate entities. Ocwen Financial maintains corporate records entirely separate from those [o]f Ocwen Servicing. Ocwen Financial and Ocwen Loan Servicing observe all corporate formalities, neither entity is undercapitalized, and there is not commingling of funds between the two entities.

(Neil Aff. p. 2.)

Drake's argument fails to address the *Van Dorn* factors set forth above. Drake does not argue that Ocwen Financial or Ocwen Servicing failed to maintain adequate corporate records or failed to comply with corporate formalities. Drake also does not argue that Ocwen Financial and Ocwen Servicing commingled their funds or assets. Moreover, Drake admits that Ocwen Servicing is fully capitalized.[2] Finally, Drake fails to argue that Ocwen Financial treated the assets of Ocwen Servicing as its own or that Ocwen Servicing treated the assets of Ocwen Financial as its own. Accordingly, because Drake has failed to show "such unity of interest and ownership" between Ocwen Servicing and Ocwen Financial through the use of the *Van Dorn* factors,

---

[2] "The bottom line, we believe, is that Ocwen Financial operates as a unified business group by carefully contriving to keep only a principle [sic] capitalized subsidiary subject to litigation in any state." (Pl.'s Br. p. 8).

8

Ocwen Servicing is not the "alter ego" of Ocwen Financial for purposes of conferring personal jurisdiction.

Further, even if Drake had shown that such unity of interest and ownership existed between Ocwen Servicing and Ocwen Financial and that the separate personalities no longer existed, adhering to the fiction of separate corporate existence would not sanction a fraud or promote injustice in this case. As mentioned above, Drake admits Ocwen Servicing is fully capitalized. Further, there are no additional causes of action alleged against Ocwen Financial that are not alleged against Ocwen Loan Servicing; nor will Drake's recovery be impaired because she cannot proceed against Ocwen Financial.

Accordingly, Ocwen Servicing's actions may not be imputed to Ocwen Financial for purposes of personal jurisdiction.

## Website Use Jurisdiction

Next, Drake claims personal jurisdiction over Ocwen Financial based upon its website use. "[A] defendant's maintenance of a passive website does not support the exercise of personal jurisdiction over that defendant in a particular forum just because the website can be accessed there." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004).

In weighing the issue of personal jurisdiction in the context of the Internet, courts typically use a sliding scale analysis to ascertain what level of Internet interaction subjects a defendant to personal jurisdiction. *Euromarket,* 96 F.Supp.2d at 837.

The first category consists of "situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign

jurisdiction . . . over the Internet, personal jurisdiction is proper." *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp.1119, 1124 (W.D. Pa 1997) (*Zippo*). Websites in this category are "interactive" and allow for a transaction between the user and the website owner. *Euromarket*, 96 F. Supp. 2d at 837.

The second category "is occupied by interactive websites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Zippo*, 952 F.Supp. at 1124. Websites belonging to this category are not fully interactive; they do not permit as much interaction as those in the first category. *Euromarket*, 96 F. Supp. 2d at 838.

The final category consists of "situations where a defendant has simply posted information on an Internet website which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." *Zippo*, 952 F. Supp. at 1124.

Drake alleges that Ocwen Financial's website, www.ocwen.com, is interactive because it has a link which directs its viewers to Ocwen Servicing's website, www.ocwencustomers.com. At Ocwen Servicing's website, consumer borrowers can make direct payments, get payoff information, electronically access information, talk to a customer service representative, obtain answers to frequently asked questions, and receive information about their loan modification under the "Make Home Affordable Modification Program." No other parts of Ocwen Financial's website are interactive.

Ocwen Financial cites *Aero Products Int'l v. Intex Corp.*, 2002 U.S. Dist LEXIS 17948 (Sep. 20, 2002) (*Aero Products*) in response to Drake's website jurisdiction arguments. In that case, Intex's website users were not able to directly purchase products. *Aero Products*, 2002 U.S. Dist LEXIS 17948, at *18. However, there was a link on Intex's website maintained by Intex Recreation that led to a website that did allow consumers to purchase Intex's products. *Id.*

Intex Corporation's website was analyzed under the second category referred to above.[3] This Court held that because users were not able to purchase items directly from the intexcorp.com website, the site functioned as an advertisement:

> Advertisements on the Web can subject a defendant to personal jurisdiction if there is evidence that the defendant intended that its advertisement reach a particular state. Generally, national advertisements (including those on the Internet) are insufficient to subject a defendant to jurisdiction in Illinois.
>
> *Id.* at *20.

In this case, as in *Aero Products,* it is clear that Ocwen Financial's website is not fully interactive because no goods or services are sold on the website. Nor is it completely passive as users can navigate to other websites from it. Therefore, it functions as an advertisement. Further, Drake does not claim or provide evidence that the www.ocwen.com advertisement was specifically directed towards users in Illinois nor that Ocwen Financial targeted the website at Illinois users.

Accordingly, Ocwen Financial's website use cannot be used to exercise personal jurisdiction over it.

---

[3] "[T]he website [intexcorp.com] is not fully interactive, as users are not able to purchase products directly from the website. Yet, . . .the website is not entirely passive either . . . Only when the user goes to the intexstore.com website, do they have the opportunity to purchase accessories." *Aero Products*, 2002 U.S. Dist LEXIS 17948, at *18.

*Motions under 12(b)(6)*

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint." *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim for relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*Iqbal*). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). Additionally, determining whether a complaint should survive a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. To survive a motion to dismiss, the well-

pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct. (*Id.*)

<u>Ocwen Servicing's Motion to Dismiss for Failure to State a Claim as to Drake's Count I, Alleging a Violation of TILA.</u>

15 U.S.C. § 1601, *et seq.*, and its implementing Regulation Z, 12 C.F.R. § 226, *et seq.*, require that certain material disclosures be made to a consumer seeking an extension of credit secured by real property. The purpose of Regulation Z is to promote the informed use of consumer credit by requiring disclosures about its terms and cost. 12 C.F.R. § 226.1(b).

Drake's Amended Complaint alleges three TILA violations: (1) a violation of 12 C.F.R. § 226.18(h), which requires a disclosure of the amount Drake will have paid when she has made all her scheduled payments; (2) a violation of 12 C.F.R. § 226.18(g), which requires a payment schedule of the loan, stating the number, amounts, and timing of payments scheduled to repay the obligation; and (3) a violation of 12 C.F.R. § 226.20(a)(4), which requires TILA disclosures during a refinancing.

Ocwen Servicing's Motion to Dismiss for Failure to State a Claim argues two grounds why Drake's Count I of her Amended Complaint, alleging a violation of TILA should be dismissed: (1) TILA does not apply to Ocwen Servicing because a loan modification is not a "refinancing" under TILA and (2) TILA does not apply to Ocwen Servicing because it is a loan servicer, not a creditor.

Both parties agree that generally no disclosures need to be made when no new credit is extended to the consumer. But there are exceptions, including when a consumer "refinances" their loan as that term is used in 12 C.F.R. 226.20 (a) and (a)(4). A "refinancing" requires new TILA disclosures to be given. Drake contends that the instant

modification is a "refinancing," and therefore needing new TILA disclosures, and Ocwen Servicing argues it is not.

12 C.F.R. § 226.20 (a) and (a)(4) states:

(a) *Refinancings*. A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. The new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation. The following shall not be treated as a refinancing: . . . (4) A change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency, unless the rate is increased, or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums for continuation of insurance for the types described in § 226.4(d).

12 C.F.R. § 226.20 (a) and (a)(4).

Supplement I to Part 226 – Official Staff Interpretations *Section 226.20(2)* states: "A transaction is subject to § 226.20(a) only if it meets the general definition of a refinancing. Section 226.20(a) (1) through (5) lists 5 events that are not treated as refinancings, even if they are accomplished by cancellation of the old obligation and substitution of a new one." Supplement I to Part 226 – Official Staff Interpretations Section 226.20(2).

Therefore, before 12 C.F.R. § 226.20(a)(4)'s exception applies, it first must be determined that the transaction is a "refinancing" pursuant to 12 C.F.R. § 226.20(a). If it is determined that the transaction is a "refinancing," it then must be determined that the transaction resulted in a change in the payment schedule or a change in the collateral requirements due to the consumer's default or delinquency. If both of these requirements are satisfied, it then must be determined that either the rate was increased, or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums of

continuation of insurance. If all three of these requirements are satisfied, the transaction will be deemed a "refinancing," and the transaction will require new TILA disclosures.

Ocwen Servicing cites *Jackson v. American Loan Co., Inc.*, 202 F.3d 911 (7th Cir. 2000), in support of its motion. In *Jackson*, Jackson took out a "payday loan" – short-term credit designed to be repaid on the borrower's next payday – from defendant American Loan Company ("American Loan"). *Jackson*, 202 F.3d 911, 912 (7th Cir. 2000). American Loan permits its clients to put off repayment in exchange for an "extension fee." *Id.* at 912. Jackson contended that this situation amounted to a refinancing because the entire debt is repaid in one lump sum pursuant to 12 C.F.R. § 226.20(a), and it therefore required TILA compliance. *Jackson*, 202 F.3d at 912. The Court of Appeals rejected Jackson's argument, stating: "The rule stated by the Commentary is that only 'the cancellation of [the original] obligation and the substitution of a new obligation' amount to a refinancing." *Id.* at 913 (internal citations omitted).

It is clear that the modification here at issue did not act as a cancellation of the original obligation and the substitution of a new obligation. The Modification Agreement states: "[A]ll covenants, agreements, stipulations, and conditions in your note and Mortgage will remain in full force and effect, except as herein modified, and none of your obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions . . . ." (Pl.'s Amend. Compl. Ex. 6.) Drake attempts to distinguish her case from *Jackson* on the grounds that Jackson's "extension fee" was disclosed, whereas the fees associated with Drake's modification were not disclosed. Drake argues that her new loan balance under the Modification Agreement included a

15

$900 charge for "FB/Repayment Agreement," and that this fee was not disclosed to her when she signed her Modification Agreement.

Drake's attempt at distinguishing the instant case from *Jackson* misses the point of *Jackson*. The fact that the "extension fee" in *Jackson* was disclosed was not the reason it was not a "refinance"; the reason it was not a "refinance" is because it did not replace the existing obligation and replace it with a new one. "American Loan does not 'cancel' the old loan and note, or substitute a new one, when it agrees to defer repayment until another payday, and thus it does not 'refinance' the loan." *Jackson*, 202 F.3d at 913.

Drake also cites *Chatman v. Fairbanks Capital Corp.*, 2002 U.S. Dist. LEXIS 10945 (N.D. Ill. June 13, 2002) (*Chatman*), in support of its argument that the modification is a "refinance." Chatman claimed that Fairbanks Capital violated TILA and Regulation Z by improperly adding "speed pay" and "property preservation" fees to Chatman's unpaid principal loan balance and thus incorrectly stated Chatman's loan balance on the statutorily required variable-rate adjustment disclosure. *Chatman*, 2002 U.S. Dist. LEXIS 10945, at *1-2. However, variable-rate adjustment loans, at issue in *Chatman*, are another exception under TILA, like "refinancing," that require additional TILA disclosures.[4]

In this case, it is clear that Drake's modification did not replace the existing obligation and replace it with a new one. Therefore, no TILA disclosures are required for

---

[4] *Variable-rate adjustments.* An adjustment to the interest rate with or without a corresponding adjustment to the payment in a variable-rate transaction subject to § 226.19(b) is an event **requiring new disclosures** to the consumer. At least once each year during which an interest rate adjustment is implemented without an accompanying payment change, and at least 25, but no more than 120, calendar days before a payment at a new level is due, the following disclosures, as applicable, must be delivered or placed in the mail .... 12 C.F.R. § 226.20(c) (emphasis added).

the modification. Because TILA disclosures are not required, Ocwen Servicing's failure to include them is not a TILA violation. Accordingly, Ocwen Servicing's Motion to Dismiss for Failure to State a Claim is granted as to Count I.[5]

<u>Ocwen Servicing's Motion to Dismiss for Failure to State a Claim as to Drake's Counts II and III, Alleging a Violation of the ICFA and a Claim for Unjust Enrichment.</u>

Drake's Amended Complaint alleged three counts: (1) a TILA violation, (2) a violation of the ICFA, and (3) a claim for Unjust Enrichment. In her Amended Complaint, Drake alleges that jurisdiction is proper based on her TILA claim, and that the ICFA violation and the claim for Unjust Enrichment is proper under this Court's supplemental subject-matter jurisdiction over the pendent state-law claims pursuant to 28 U.S.C. § 1367. Because this Court has dismissed Drake's TILA violation claim for failing to state a claim, this Court declines to exercise supplemental jurisdiction over the remaining two state-law claims.[6] Accordingly, Drake's remaining two counts, alleging a violation of the ICFA and a claim for Unjust Enrichment, are dismissed.

---

[5] Ocwen Servicing also contends that TILA does not apply to them because they are a loan servicer, not a creditor. Because this Court has found that TILA does not apply to the instant modification, this issue is moot and need not be addressed.

[6] *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Drake has failed to meet its burden of establishing personal jurisdiction over Ocwen Financial. Accordingly, Ocwen Financial's Motion to Dismiss for Lack of Personal Jurisdiction is granted. Further, Ocwen Servicing's Motion to Dismiss for Failure to State a Claim is granted; finally, Drake's Counts II and III are dismissed because this Court declines to exercise supplemental jurisdiction over them.

Date: May 6, 2010

JOHN W. DARRAH
United States District Court Judge